*Tagged Opinion*



**ORDERED in the Southern District of Florida on June 29, 2021.**

Laurel M. Isicoff
Chief United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

IN RE:                                            CASE NO.: 19-26521-BKC-LMI

ROBERTO ROMAGNOLI,                                Chapter 7

      Debtor.

_____/

## ORDER GRANTING DEBTOR'S MOTION FOR SUMMARY JUDGMENT AS TO TRUSTEE'S OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS

This matter came before the Court for hearing on January 8, 2021, on the Debtor's Motion for Summary Judgment as to Trustee's Objections to Debtor's Claimed Exemptions (ECF #84) (the "Debtor's Motion"), the Trustee's Response in Opposition to Debtor's Motion for Summary Judgment as to Trustee's Objections to Debtor's Claimed Exemptions (ECF #96), the Debtor's Reply in Support of Motion for Summary Judgment as to Trustee's Objections to Debtor's

Claimed Exemptions (ECF #107), and the Trustee's Sur-Reply in Support of her Response in Opposition to Debtor's Motion for Summary Judgment as to Trustee's Objections to Debtor's Claimed Exemptions (ECF #108). For the reasons set forth below, the Debtor's Motion is granted and the Trustee's Objection to Debtor's Claimed Exemptions (ECF #56) (the "Objection") is overruled.

## **BACKGROUND**

The Debtor commenced this case by filing a voluntary Chapter 7 Petition on December 10, 2019 (ECF #1) (the "Petition Date"). In his Schedule B, the Debtor listed all of his assets including, at issue here: (i) a condominium at 55 S.W. 9th Street, Apt. 1607, Miami, Florida 33130 (the "Brickell Heights Property"), which he owns with his non-debtor wife, Maria Laviosa ("Wife" or "Laviosa"); (ii) a single family residence at 11843 Prince George Way, Orlando, Florida 32836 (the "Orlando Property") which he owns with Laviosa; (iii) an interest in Marova, LLC ("Marova, LLC"), a Florida limited liability company that is owned 100% by the Debtor and Laviosa  (and which in turn owns an office condominium); and (iv) the Varoma Joint Revocable Living Trust (the "Varoma Trust"), a 2015 estate planning trust created and owned by the Debtor and Laviosa as husband and wife. *See* Schedule B, (ECF #1). The Varoma Trust owns two parcels of real property: (i) the Debtor's homestead property located at 9401 Collins Avenue, Unit 1103, Surfside, Florida 33154 (the "Homestead Property"), which he purchased in 2005, the year before he and Laviosa were married; and (ii) a condominium located at 2475 Brickell Avenue, Unit 2504, Miami, Florida 33129

(the "Metropolitan Property"), which is a condominium that was purchased by Laviosa prior to her marriage to the Debtor in 2006 and was owned solely by Laviosa until she transferred it to the Varoma Trust in 2015. According to the affidavit of Laviosa (ECF #66, Ex. B) (the "Laviosa Affidavit"), the Trust also apparently owns 100% of the shares in Concept International Realty Inc. ("Concept"), a real estate company of which Laviosa is the licensed real estate broker.[1]  Prior to the transfer to the Varoma Trust, the shares in Concept were owned 100% by the Debtor and Laviosa as tenants by the entireties.

On his Schedule C, the Debtor claimed as exempt pursuant to 11 U.S.C. §522(b)(3)(B) the Brickell Heights Property, the Orlando Property, Marova, LLC and the Varoma Trust, all assets owned with his Wife. *See* Schedule C, (ECF #1). The Debtor also designated as exempt his interest in his Homestead Property held in the Varoma Trust, pursuant to Fla. Const. art. X, §4(a)(1) and Fla. Stat. §§222.01 and 222.02.  *See* Schedule C, (ECF #1).

The Trustee objected to the Debtor's claimed exemptions based on tenancy by the entirety of the Brickell Heights Property, the Orlando Property, Marova, LLC, and the Varoma Trust for a variety of reasons including lack of control, failure to meet the unity of interests required by applicable case law, and the existence of a joint creditor.  The Trustee also objected to the Debtor's claimed exemption in the Homestead Property because the Homestead Property is held in the name of the Varoma Trust and not the Debtor.

---

[1] Although the Laviosa Affidavit identifies the stock of Concept as an asset of the Varoma Trust, none of the Varoma Trust Agreement, the Debtor's bankruptcy schedules, or the Trustee's Objection identify the stock of Concept as an asset of the Varoma Trust.

## ANALYSIS

Federal Rule of Civil Procedure 56(a), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir.1990) (citation omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). At the summary judgment stage, the Court will not weigh the evidence or find facts; rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).

## The Existence of Joint Debt

The Trustee asserts that even if the Debtor has an otherwise valid exemption based on tenancy by the entireties ("TBE"), the exemption is defeated by the existence of joint debt - an unsecured obligation owed jointly by the Debtor and his Wife to the IRS. Some courts have held that if a debtor and the debtor's non-filing spouse have any joint debt, then the TBE exemption is forfeited for the benefit of all estate creditors, regardless of the size of the joint debt. *See In re Daughtry*, 221 B.R. 889 (Bankr. M.D. Fla. 1997) (holding that the proceeds from the sale of TBE property were to be distributed to *all* of the debtor's creditors when the non-filing spouse consented to the sale of the property). Other courts have concluded that only the joint creditors of a debtor and non-filing spouse are entitled to any distribution from the value of property held TBE. *See Planas v. Feltman,* 1998 WL 757988 (S.D. Fla. 1998); *In re Pepenella,* 103 B.R. 299 (M.D. Fla. 1988); *In re Alexander*, 346 B.R. 546 (Bankr. M.D. Fla. 2006); *In re Helm*, 2012 WL 1616791 (Bankr. S.D. Fla. 2012); *In re Droumtsekas*, 269 B.R. 463 (Bankr. M.D. Fla. 2000); *In re Monzon*, 214 B.R. 38 (Bankr. S.D. Fla. 1997). *Accord Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985).

The Trustee urges this Court to adopt the reasoning of those courts that find the exempt status of all TBE property forfeited for the benefit of all creditors if there is any joint debt. The Trustee cites particularly to the decision of this Court in *In re Planas,* 199 B.R. 211 (Bankr. S.D. Fla. 1996), *rev'd in part sub nom. Planas v. Feltman*, 1988 WL 757988, inviting this Court to disregard the reversal by the District Court, and failing to cite either Judge Mark's opinion in

*Monzon* or Judge Kimball's opinion in *Helm*. The Court declines to follow either *Planas* or *Daughtry* or the few cases with similar holdings. Rather, this Court finds the reasoning of the majority of judges in this district, as well as the holdings of the majority of judges in the Middle District of Florida, to be more persuasive, and a proper interpretation of Florida law and the Bankruptcy Code. Thus, the Court holds that only TBE assets sufficient to pay the IRS claim may be liquidated and solely to pay the IRS claim.

Having dispensed with the Trustee's argument that any TBE exemption is defeated by the joint debt, the Court will now turn to the validity of the Debtor's claimed TBE exemptions.

### The Brickell Heights Property and The Orlando Property

The Trustee has objected to the Debtor's claimed exemption of the Brickell Heights Property and the Orlando Property as property owned as tenants by the entireties.  Property held by spouses as tenants by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names). *Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52 (Fla. 2001).

The Trustee asserts, based on testimony by the Debtor at a deposition, that because Laviosa made decisions with respect to these properties, that there

is no unity of possession as required for TBE ownership. There is no joint "control" of the properties by the Debtor and his Wife, the Trustee argues, and therefore the properties are owned by the Debtor and his Wife as "joint tenants" rather than TBE.

In response, the Debtor contends that neither the Debtor nor his Wife ever exercised sole "control" of the properties and they made all major decisions together, as reflected in the deposition testimony of both the Debtor and Laviosa submitted in support of the Debtor's Motion.  The Debtor asserts that the fact that his Wife may have made decisions regarding certain day to day matters pertaining to these properties does not reflect the kind of "sole control" necessary to destroy the unity of possession required for TBE ownership of these properties. At no time did either the Debtor or his Wife have the ability to alienate the property without the joinder of the other.

The Court agrees with the Debtor that neither the Debtor nor his Wife had the sole control of the Brickell Heights Property and the Orlando Property that is necessary to destroy the unity of possession (joint ownership and control) required for TBE ownership of these properties by the Debtor and Laviosa.  In *Beal Bank,* the Florida Supreme Court held that control is determined by the ability (or inability) of one spouse to alienate a portion of the TBE estate without the consent of the other spouse. The Trustee did not cite to any material in the record that would indicate that either the Debtor or his Wife had the ability to alienate any portion of the Brickell Heights Property or the Orlando Property without the consent of the other, either by sale, mortgage, or otherwise.

Additionally, although the Trustee acknowledges that ownership of real property "in the name of both spouses vest title in them as tenants by the entireties," *see Beal Bank*, 780 So. 2d at 54, the Trustee asserts that this is a rebuttable presumption that is overcome because the Debtor signed mortgage applications for each of these properties that stated the property would be owned by the Debtor and his Wife as "joint tenants" rather than as tenants by the entireties. However, according to the Laviosa Affidavit, the applications on which the Trustee relied were prepared by mortgage brokers and neither was signed by the Debtor.

The Debtor argues, and the Court agrees, that a reference to "joint tenants" on a mortgage application prepared before the Debtor and his Wife took title to the properties, even if signed by the Debtor, is not sufficient to overcome the strong presumption in favor of TBE ownership.  "In the case of ownership of real property by husband and wife, the ownership in the name of both spouses vests title in them as tenants by the entireties. . . . Thus, '[a] conveyance to spouses as husband and wife creates an estate by the entirety in the absence of express language showing a contrary intent.'" *Id.* (citations omitted). Under Florida law, real property titled in the name of both spouses is presumptively considered to be a tenancy by the entireties, and this presumption is not rebuttable. *Roberts-Dude v. JP Morgan Chase Bank, N.A.*, 498 B.R. 348, 354-55 (S.D. Fla. 2013).

The Trustee has failed to cite to any material in the record or to any argument that would show that there is any issue of material fact that would defeat the Debtor's claimed TBE exemption in the Brickell Heights Property or

the Orlando Property. Thus, the Court overrules the Trustee's objection to this claimed exemption.

### Marova, LLC

The Trustee argues that the Debtor may not claim his interest in Marova, LLC as TBE because of lack of joint control. In support of this argument, the Trustee relies on the deposition testimony of the Debtor in which the Debtor testified that Laviosa made decisions regarding Marova, LLC; on Marova, LLC's articles of organization which were signed only by the Debtor; and on Marova, LLC's annual corporate reports filed with the Florida Division of Corporations, in which only the Debtor or Laviosa, but not both at the same time, were named as manager of Marova, LLC and executed the reports in various years.

In response, the Debtor again contends that neither the Debtor nor his Wife ever exercised sole "control" of Marova, LLC and they made all decisions together, as reflected in the testimony of both the Debtor and Laviosa. The Debtor also relies on the operating agreement for Marova, LLC that was executed by the Debtor and Laviosa when the company was formed in March 2011, which clearly identifies both Roberto Romagnoli and Maria Laviosa as the sole managers of Marova, LLC, and as the owners of Marova, LLC as "Tenants by Entireties 100%." The Debtor points out that the Florida Revised Limited Liability Company Act, Fla. Stat. §605.0203(1)(b), only requires a company's initial articles of organization to be signed by at least one person acting as an authorized representative, and the annual report of a limited liability company must only contain the name, title or capacity, and address of at least one person who has

9

the authority to manage the company pursuant to Fla. Stat. §605.0212(1)(e). Therefore, the Debtor contends, and the Court agrees, that Marova, LLC's filings with the State of Florida are not dispositive of the Trustee's allegation that only the Debtor or his Wife at different times had sole and exclusive control of Marova, LLC.

The Debtor also argues that even if the Debtor or his Wife had been the sole manager of Marova, LLC at any given time, this does not constitute the "sole control" necessary to destroy the unity of possession required for TBE ownership, because neither the Debtor nor his Wife had or has the ability to alienate their TBE interest in Marova, LLC without the consent of the other spouse. The Trustee has not pointed to any material fact raising an issue that either the Debtor or his Wife had the ability to alienate an interest in Marova, LLC without the consent of the other.

Finally, the Marova, LLC operating agreement reflects the clear intent of the Debtor and Laviosa to own Marova, LLC as "Tenants by Entireties 100%," and the Trustee has presented no evidence to refute this clear intention. Membership interests in a limited liability company, like stock in a corporation or other forms of personal property, may be held by a husband and wife as tenants by the entireties. *See Cacciatore v. Fisherman's Wharf Realty Ltd. Partnership*, 821 So. 2d 1251 (Fla. 4th DCA 2002).

The Trustee has failed to cite to any material in the record or to any argument that would show that there is any issue of material fact that would

defeat the Debtor's claimed TBE exemption in Marova, LLC. Thus, the Court overrules the Trustee's objection to this claimed exemption.

### The Homestead Property

The Trustee has objected to the Debtor's claimed homestead exemption on the Homestead Property because the Debtor transferred title to the Homestead Property to the Varoma Trust. The Trustee contends that because title to the Homestead Property is held in name of Varoma Trust, rather than the Debtor individually, it is not entitled to protection as the Debtor's homestead.

In response, the Debtor asserts that it is undisputed that the Homestead Property has been the Debtor's homestead since he acquired it in 2005. The Trustee does not dispute that the Homestead Property is, in fact, the Debtor's homestead.

The Court agrees that the Homestead Property is protected under Florida law notwithstanding that title to the property is held in the name of the Varoma Trust.  Florida law governs the scope and existence of the Debtor's interest in the Homestead Property. *In re Alexander*, 346 B.R. at 549. With very limited exceptions, Florida courts have consistently held that Florida's liberal homestead protections protect homesteads from creditors regardless of the manner in which title to the homestead is held. *See Engelke v. Estate of Engelke*, 921 So. 2d 693, 695 (Fla. 4th DCA 2006); *Callava v. Feinberg*, 864 So. 2d 429, 431 (Fla. 3d DCA 2004); *Southern Walls, Inc. v. Stilwell Corp.,* 810 So. 2d 566, 569-70 (Fla. 5th DCA 2002); *In re Alexander*, 346 B.R. at 551 (Chapter 7 debtor entitled to claim residence as exempt under Florida's homestead exemption even though title to

property by a revocable trust, as debtor purchased property several years before as sole and exclusive residence, had lived there continuously ever since, had property listed as her permanent address on driver's license and other documents, and had the right to revoke trust at any time).

The Trustee rests her entire argument on one case - *In re Bosonetto*, 271 B.R. 403 (Bankr. M.D. Fla. 2001) - the reasoning of which no other court, including other judges in the Middle District of Florida, has adopted. Based on the substantial body of Florida case law, which liberally applies the homestead protection regardless of the manner in which title to the homestead is held, the Court overrules the Trustee's objection to the Debtor's claimed homestead exemption of the Homestead Property.

### The Varoma Trust

In his Schedule C, the Debtor designated his interest in the Varoma Trust as exempt property owned by the Debtor and his Wife as tenants by the entireties. The Trustee contends that the Debtor transferred properties to his self-settled trust after litigation was filed against him, and the transfers were done with the intent to evade creditors. The Trustee also asserts that the transfer of property by the Debtor and his Wife to a spendthrift trust over which they have control as co-trustees destroyed the TBE nature of the transferred assets and therefore the Debtor's interest in the Varoma Trust assets is property of the estate. At the hearing, the Trustee further asserted that the Debtor's interest in the Varoma Trust is not the kind of property interest that can be held as tenants by the entireties.

The Debtor asserts that his interest in the Varoma Trust is owned TBE with his Wife and therefore is exempt under 11 U.S.C. §522(b)(3)(B) and not an asset of the estate.  The Debtor contends that the Varoma Trust was created by the Debtor and his Wife as grantors and the Debtor and his Wife are co-trustees, both of whom must consent to the alienation of any trust property.  The Debtor also asserts that the Varoma Trust was not created to evade creditors, as evidenced by the fact that none of the property transferred to the Varoma Trust would have been available to the Debtor's creditors even if the Varoma Trust had not been established. The Varoma Trust, according to the Debtor, was created as a tool to protect the interests of his minor child if something happened to the Debtor and his Wife.

As the Court previously noted, the Varoma Trust owns three assets: (i) the Debtor's Homestead Property[2]; (ii) the Metropolitan Property; and apparently (iii) the stock in Concept.

The Debtor and his Wife, as "husband and wife", were the grantors of the Varoma Trust and are co-trustees of the Varoma Trust. The Debtor, his Wife, and their minor child are the beneficiaries of the Varoma Trust. The Debtor argues that there is no reason why his interest in the trust should not constitute "personal property" that can be held TBE.  That may be the case, but the Court does not need to tackle that issue in this case, because, regardless of whether the Debtor can hold his interest in a revocable trust as TBE property, the Trustee

---

[2] The Court has already addressed the Debtor's claimed exemption of the Homestead Property.

cannot administer the property held in the Varoma Trust, which is the relief that the Trustee ultimately seeks.

Section 541 of the Bankruptcy Code provides that, with some exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case," is property of the estate and subject to administration by a chapter 7 trustee. 11 U.S.C. §541; 11 U.S.C. §704. A chapter 7 trustee "stands in the shoes" of a debtor with respect to the debtor's interest in assets which become part of the estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). However, the trustee "[takes] no greater rights than the debtor himself had." *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004). Where the debtor's interest is in a trust, the trustee acquires only those interests that the debtor had in the trust. *See In re Raborn,* 470 F.3d 1319, 1323 (11th Cir. 2006) ("[T]he [bankruptcy] trustee succeeds only to the title and rights in the property that the debtor possessed.")

Excluded from property of the estate is "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." 11 U.S.C. §541(b)(1). With respect to the Debtor's beneficial interest in the Varoma Trust, the Bankruptcy Code states that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. §541(c)(2). On the Petition Date, the Debtor held only three possible interests in the Varoma Trust – grantor, co-trustee and beneficiary.  Florida law and the Varoma Joint

Revocable Living Trust Agreement (the "Varoma Trust Agreement")[3] govern the rights and, where applicable, the power, of each of these interests.

The Trustee relies on *In re Givans*, 623 B.R. 635 (Bankr. M.D. Fla. 2020) in which the court sustained the chapter 7 trustee's objection to a TBE exemption claim of property held in a revocable trust. In *Givans*, the debtor and his non-debtor spouse claimed property in their trust as exempt TBE property. The court rejected that argument noting, among other problems with the debtor's position, that a trust cannot hold property as TBE because a trust is an entity, not a married couple.[4] In this case, the Debtor did not seek to separately exempt the property in the Varoma Trust (other than the Homestead Property) so the reasoning in *Givans* is not analogous.

The Trustee also argues[5] that because either the Debtor or his Wife may unilaterally remove property from the Varoma Trust, the Trustee may reach the Metropolitan Property. However, the Trustee's position ignores Florida law. The Trustee cites to Article IX(b) of the Varoma Trust Agreement which provides the grantor with "[t]he right to revoke this agreement . . . with respect to any . . . property held by the trustees and to require the same to be . . . delivered to me, free from trust." The Trustee asserts that this means the Debtor could remove the Metropolitan Property from the Trust and have it delivered to him. Therefore,

---

[3] The Varoma Trust Agreement is attached as Exhibit A to (ECF #85).

[4] Apparently, some states have provided by statute that property put in a revocable trust can retain its TBE status. Florida is not one of those states. Michael S. Singer, *General Exemptions from Creditors*, ASPR FL-CLE 2-1 (2020).

[5] In the Trustee's proposed order, the Trustee introduced arguments and law not included in her original objection or raised at the hearing.

the Trustee argues, she can do the same. That is not correct. Fla. Stat. §736.0602 states:

> (2) If a revocable trust is created or funded by more than one settlor:
>      (a) To the extent the trust consists of community property, the trust may be revoked by either spouse acting alone but may be amended only by joint action of both spouses.
>      **(b) To the extent the trust consists of property other than community property, each settlor may revoke or amend the trust with regard to the portion of the trust property attributable to that settlor's contribution**.[6]

(emphasis added). *See also* Jonathan A. Galler, 18 Fla. Prac., *Law of Trusts* §16:6 (2020 ed.) ("As a general principle, each settlor may unilaterally revoke or amend his or her trust portion.").

Thus, only the Wife could remove the Metropolitan Property from the Trust, and that property would then become, again, her sole property, unless she chose to then transfer it. It would not be the Debtor's property and therefore the Trustee cannot reach it.

The Debtor and his Wife, as grantors, retain the right to revoke the Varoma Trust.  Each of them, individually, has the right to remove from the Varoma Trust any asset that they individually contributed. Once removed, that asset goes back to whomever contributed the asset. Collectively, they must act jointly as grantors to revoke the Varoma Trust completely. Thus, the only act that the chapter 7 Trustee can exercise through the Debtor's right as a grantor is remove the

---

[6] To the extent that the stock of Concept is, in fact, held in the Varoma Trust, because it was contributed as TBE and not community property, the Debtor and his Wife could only jointly remove the stock from the Varoma Trust.

Homestead Property, which retains its exempt status whether left in, or removed from, the Varoma Trust.[7]

As co-trustees, the Debtor and his Wife hold the right to retain, sell, convey, pledge or mortgage, lease, exchange or dispose of any property in the Varoma Trust by unanimous vote so long as both serve as co-trustees and neither has become incapacitated or otherwise is unable to serve. *See* Article V of the Varoma Trust Agreement. Neither has the authority to act unilaterally. Thus, even if the Trustee could exercise the power of a co-trustee under the Varoma Trust, the Trustee has not cited to any case that suggests that 11 U.S.C. §363(f) gives the Trustee, acting with the authority of a co-trustee of a trust, the authority to bypass the provisions of the Varoma Trust Agreement in seeking to sell property in the Varoma Trust.

The Trustee's rights as a beneficiary under the Varoma Trust Agreement are limited. The Debtor's beneficial interest in the trust is derived from his interest as grantor. He is entitled to any net income as principal of the trust estate, although there is no indication there is any income. The grantor has the right of occupancy, and "the beneficial interest and possessory right" to all of the real estate.[8]

---

[7] The Varoma Trust Agreement also gives the grantors the "full use and possession of any non-income-producing real estate owned by the trust" and "the right to reside upon any property placed in [the] trust." *See* Article II of the Varoma Trust Agreement.

[8] This section of the Varoma Trust Agreement specifically mentions the Florida Statute Taxation sections relating to the homestead exemption.

The Trustee also referred to a body of case law that addresses the limitations of a spendthrift trust.[9] *See In re Brown*, 303 F.3d 1261 (11th Cir. 2002); *In re Williams*, 118 B.R. 812 (Bankr. N.D. Fla. 1990); *In re Cattafi*, 237 B.R. 853 (Bankr. M.D. Fla. 1999). However, as the Trustee acknowledged in her objection, the ability of the Trustee to reach the Debtor's beneficial interest is limited by applicable nonbankruptcy law.  Fla. Stat. §736.0505 states that "(1) whether or not the terms of a trust contain a spend thrift provision, the following rules apply: (a) The property of a revocable trust is subject to the claims of the settlor's creditors during the settlor's lifetime to the extent the property would not otherwise be exempt by law if owned directly by the settlor."

In this case, if the Homestead Property were not in the Varoma Trust it would still be exempt from the claims of the Debtor's creditors. If the Metropolitan Property were not in the Varoma Trust, it would be the Wife's sole property and not subject to the claims of the Debtor's creditors. Assuming the Concept stock is in the Varoma Trust, if not in the Varoma Trust it would be TBE property not subject to the claims of the Debtor's creditors unless the creditors were joint creditors.

In sum, there is no theory under which the Trustee can reach the assets of the Varoma Trust.[10]

---

[9] The Varoma Trust purports to be a spendthrift trust. Debtor's counsel claimed it is not a spendthrift trust, but the Varoma Trust Agreement has a spendthrift provision. It is not relevant for purposes of this opinion whether or not the Varoma Trust is a spendthrift trust.

[10] The Trustee expressed frustration that the Debtor has exempt assets worth collectively over $1.4 million that are exempt from the Debtor's creditors. But those exemptions are statutory and if the Trustee wants to reach these assets, she must reach out to the Florida legislature.

## **CONCLUSION**

The Trustee has raised many objections to the Debtor's exemptions, most of which objections were, at best, incredibly aggressive positions. The Court that finds that the few cases relied upon by the Trustee are outliers. The Court chooses to rely on persuasive case law, the operative documents and applicable state law. For all of those reasons, and the reasons set forth above, all of the Trustee's objections are overruled and the Debtor's Motion is GRANTED.

###

Copies furnished to:
Tamara D. McKeown, Esq.
Isaac M. Marcushamer, Esq.

*Attorney McKeown is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*